374                              454 Mass. 374 (2009)

Wendy's Old Fashioned Hamburgers of New York, Inc. *v.* Board of Appeal of Billerica.

WENDY'S OLD FASHIONED HAMBURGERS OF NEW YORK, INC.
*vs.* BOARD OF APPEAL OF BILLERICA & another[1]
(and a companion case).

Middlesex. April 9, 2009. - July 24, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Jurisdiction,* Superior Court. *Zoning,* Variance, Special permit, Appeal, Board of appeals: decision, By-law, Judicial review. *Practice, Civil,* Standing.

Discussion of the regulatory framework governing an appeal to the Superior Court from a decision of a local zoning board of appeals. [380-383]

A business had standing to pursue an application for modification of a 1992 decision of a local zoning board of appeals (board) in light of significantly changed circumstances (i.e., a roadway expansion project and an eminent domain taking), and the Superior Court had jurisdiction to review the board's 1997 and 1999 denial of the business's modification requests. [383-385]

A Superior Court judge properly annulled decisions of a local zoning board of appeal (board) denying requests to modify a special permit and variance it previously had granted to a business, where the decisions of the board were essentially conclusions with no facts to support them [385-387]; further, the judge did not err in ordering the board to allow the requested modification (the construction of a second entrance to the business's property), where, considering the findings made by the judge regarding traffic (the reason proffered by the board for the first time on appeal), a further remand to the board for a third consideration of the business's request for modification would delay an inevitable result [387-389].

CIVIL ACTIONS commenced in the Superior Court Department on December 31, 1997, and June 7, 1999.

After consolidation, the case was heard by *Christine M. McEvoy,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Patrick J. Costello* for the defendants.

*James T. Dangora, Jr.,* for the plaintiff.

MARSHALL, C.J. The board of appeal of Billerica (board) appeals from a judgment of the Superior Court ordering the

---

[1]Town of Billerica (town).

board to modify a special permit and variance it previously had granted to Wendy's Old Fashioned Hamburgers of New York, Inc. (Wendy's). The original special permit and variance provided that there be only one entrance-exit (hereinafter entrance) to the Wendy's site, and that a green strip be built along another boundary where Wendy's had proposed a second entrance.[2] After a jury-waived trial, the trial judge ordered the board to permit Wendy's to build a second entrance. The board appealed, claiming that the Superior Court lacked jurisdiction to review its decision because Wendy's did not appeal from the single entrance limitation when initially imposed, that its denial of Wendy's request to modify the condition was in any event a proper exercise of its authority, and that the judge should not have ordered the board to issue a modified special permit and variance permitting a second entrance and removing the green strip. We transferred the case here on our own motion.

For the reasons described below, we conclude that the Superior Court had jurisdiction to review the board's actions. We also agree with the judge that the board did not provide adequate reasons or factual support for its decisions denying relief to Wendy's and that a remand to the board would only delay an inevitable result. We affirm the judgment of the Superior Court in all respects.

1. *Background.* We summarize the facts found by the judge, supplemented by undisputed facts of record.[3] In 1992, in anticipation of constructing a restaurant on property at the intersection of Boston Road and Pollard Street in the town of Billerica (town), Wendy's petitioned the board for a special permit[4] and a

---

[2]Section 7.4 of the zoning bylaws of the town provides that "green strips" "consist of planted or natural vegetation" and "must not be built on, not paved, and not be parked on."

[3]The tape recording of the proceedings before the judge could not be located. Accordingly, the facts are drawn from the judge's findings of fact, which are not contested by the board, and the trial exhibits reproduced in the record appendix.

[4]General Laws c. 40A, § 9, provides that a special permit "may be issued only for uses which are in harmony with the general purpose and intent of the . . . by-law, and shall be subject to general or specific provisions set forth therein; and such permits may also impose conditions, safeguards and limitations on time and use."

Section 17.2 of the zoning bylaws of the town provides, in relevant part: "In granting a special permit, the [special permit granting authority] . . . shall

variance[5] to allow the construction of a restaurant with a "drive-through window."[6] On March 4, 1992, the board granted both, provided that there be only one entrance to the Wendy's site from Boston Road, and that there be no access from Pollard Street and the proposed second access converted to a green strip.[7] In 1993, Wendy's purchased the site, on which it built its restaurant in conformity with the special permit and variance. Meanwhile, the Massachusetts Highway Department, in conjunction with the town department of public works, began planning a roadway improvement project with the goal of widening Boston Road from two to four lanes, including the portion in front of Wendy's, and in 1993 the Commonwealth and the town began conducting informational meetings regarding the redesign and reconstruction of the road. To accommodate the expansion project, the town

impose such additional conditions and safeguards" that "lessen congestion in the streets . . . . Such special permit may be granted, when in the judgment of the [special permit granting authority] or the permit granting authority, the public welfare and convenience will be substantially served thereby, where a requested permit will not tend to impair the status of the neighborhood, and only for uses which are in harmony with the general purpose and intent of this By-Law."

[5]General Laws c. 40A, § 10, provides that the "permit granting authority shall have the power . . . to grant upon appeal or upon petition . . . a variance from the terms of the applicable zoning ordinance or by-law where such permit granting authority specifically finds that . . . a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law." The act permits boards to "impose conditions, safeguards and limitations both of time and of use" when granting a variance. Id.

[6]The Wendy's site was located within the town's general business zoning district. Pursuant to § 5.7.2 of the town bylaws, construction of a fast food restaurant in the general business district requires issuance of a special permit.

[7]In relevant part, the special permit and variance both contained the following conditions:

> "E. There shall be only one entrance to this property, which is located on Route 3A (Boston Road). No access/egress from Pollard street. . . .

> "G. No changes to the plan shall be allowed without the permission of the Board of Appeal after a public hearing. . . .

> "I. With respect to the Green Strip, the Petitioner must build according to the plan submitted and accepted except for the no entrance on Pollard Street, which shall be converted to green strips."

board of selectmen (selectmen) voted to acquire certain land from Wendy's and the abutting property on which a Christy's Market was located,[8,9] and in September, 1995, an order of taking was executed by the selectmen, see G. L. c. 79, § 1.[10]

At trial the judge found that the roadway expansion had "significantly" changed the traffic patterns in and around Wendy's. Before the expansion, vehicles entered the Wendy's site from the southbound, far side of Boston Road, crossing one lane of oncoming traffic. Vehicles leaving Wendy's could turn left (into the far lane) or right (into the near lane) onto Boston Road. After the road expansion, vehicles entering Wendy's from the southbound side of the road were required to cross two lanes of oncoming traffic. New signs prohibited vehicles leaving Wendy's from turning left onto Boston Road, requiring southbound vehicles leaving Wendy's to drive in the opposite direction on Boston Road until they are able to make a "U turn" at a cross street or other appropriate location.

As a result of the new traffic configuration,[11] in October, 1997, five years after Wendy's had obtained its special permit and variance, Wendy's petitioned the board to "modify" the 1992 special permit and variance to permit it to create curb cuts in the green strip and to construct a second entrance onto Pollard Street.[12] Wendy's requests for modification were considered

---

[8]See G. L. c. 79, § 2 ("Where no other provision is made by law, a taking of land by eminent domain by or on . . . behalf of a town [shall be made] by the selectmen").

[9]Shortly before the taking, the design and approval process for the roadway improvement project was described as "long and arduous" by Richard A. Bento, director of the department of public works for the town. By 1995, the "complicated permit process" had involved the "State [Massachusetts Highway Department], State [Department of Environmental Protection], local Conservation Commission, Board of Health, Appeals Board, Building Inspector, Planning Board and Board of Selectmen."

[10]The pro tanto for Wendy's was $116,300, which it challenged in the Superior Court. See G. L. c. 79, § 14. In 1999, pursuant to an agreement for judgment, the town paid Wendy's an additional $60,000.

[11]Boston Road and Pollard Street intersect at a shallow angle. The new traffic configuration comprised a bypass perpendicular to Pollard Street and linking it to Boston Road, the three roads now forming a triangle containing the Wendy's site and the Christy's Market site.

[12]The proposed modifications would permit Wendy's patrons seeking to travel south on Boston Road to leave the rear of the property onto Pollard Street, turn left onto the Pollard Street bypass abutting Wendy's property, and

by the board in December, 1997. At the time the dispute between the town and Wendy's concerning the value of Wendy's land taken by eminent domain was ongoing. See note 10, *supra*. Wendy's submitted letters from the town director and town counsel, and from the Massachusetts Highway Department director approving a Pollard Street entrance, and Wendy's attorney brought to the board's attention a traffic survey evidencing that there would be no adverse traffic impact on Pollard Street. Wendy's submitted a revised plan showing the proposed entrance onto Pollard Street, and informed the board that the plan had been approved by "the town and the state." The minutes of the board meeting reflect that two residents of Pollard Street addressed the board, voicing concerns that the traffic flow would be adversely affected by an entrance on to Pollard Street. The board summarily denied Wendy's request.[13]

Wendy's sought judicial review of the board's denial. In December, 1997, it filed a complaint in the Superior Court alleging that the board's refusal to modify its 1992 decisions was, among other things, "arbitrary" and "legally untenable." See G. L. c. 40A, § 17.[14] Wendy's also sought declaratory relief pursuant to G. L. c. 231A that the board be ordered to grant Wendy's requests. Some fifteen months later, the parties sought

turn left at the newly erected traffic light at the newly constructed intersection of the Pollard Street bypass and Boston Road.

[13]We set out the board's reasons for its decision in full:

"1. After visiting the site and hearing the testimony, the Board of Appeal felt this request was not in the best interest of the Town of Billerica.

"2. Relief could not be granted without a detriment to the public good.

"3. Relief could not be granted without nullifying or substantially derogating from the intent and purpose of the Zoning By-Law.

"4. The Board of Appeal felt that allowing an access and egress to and from existing restaurant to and from Pollard Street, at this time, would not be in the best interest of the neighborhood."

[14]General Laws c. 40A, § 17, provides, in relevant part: "Any person aggrieved by a decision of the board of appeals . . . may appeal to . . . the superior court department in which the land concerned is situated . . . by bringing an action within twenty days after the decision has been filed in the office of the city of town clerk . . . ."

454 Mass. 374 (2009)                                    379

Wendy's Old Fashioned Hamburgers of New York, Inc. v. Board of Appeal of Billerica.

to resolve both the eminent domain land value dispute, see note 10, *supra*, and Wendy's judicial review of the board's zoning decision, and jointly requested that the Superior Court remand the case to the board for further consideration, which it did. By this time, the expansion of Boston Road had been completed.

In May, 1999, after reconsideration of the matter, the board again denied Wendy's request for modification on substantially the same grounds as its 1997 decision. See note 13, *supra*.[15]

Wendy's again sought judicial review of the board's decision. It commenced a second action in the Superior Court alleging, inter alia, that the board's 1999 decision was "arbitrary, [was] based on legally untenable grounds, [was] insufficient in law," and was "in contravention of the evidence presented and accepted by the Board." Wendy's again sought declaratory relief pursuant to G. L. c. 231A, and requested that the 1997 and 1999 decisions of the board be annulled and the board ordered to modify the special permit and variance to allow an entrance onto Pollard Street. The two cases were consolidated by a Superior Court judge.

After a jury-waived trial during which one witness testified for Wendy's,[16] the minutes of the December 3, 1997, board meeting were admitted in evidence, and the judge took a view of the site, the judge concluded that the 1997 and 1999 decisions of the board denying Wendy's requests were "based on general conclusions without reliance on any facts in the record" and therefore invalid.[17] Citing *Davis* v. *Zoning Bd. of Chatham*,

---

[15]The 1999 decision of the board differed from its 1997 decisions with respect to its fourth stated reason only, which concluded: "4. Moving the access and egress ten feet north on Pollard Street would not ease the traffic problems." See note 7, *supra*.

[16]Douglas Prentiss, a traffic engineer, testified that the Wendy's site had thirty-two per cent less traffic than comparable Wendy's sites. He opined that the intersection at Pollard Street and Boston Road, to which traffic leaving Wendy's for points south would be directed through the proposed Pollard Street exit, offered a safer alternative for left-hand turns than the present configuration.

[17]The judge stated that the town "did not submit evidence of current traffic patterns on Pollard Street or suggest that the proposed entrance from Wendy's would substantially affect those traffic patterns." The judge also noted that the Massachusetts Highway Department had sent a notification to the town that the proposed access "would not cause a traffic problem," that the Billerica police department had, pursuant to a request of the board, reviewed Wendy's proposed plan, conducted an on-site inspection, and "did not have any recom-

380      454 Mass. 374 (2009)

Wendy's Old Fashioned Hamburgers of New York, Inc. *v.* Board of Appeal of Billerica.

52 Mass. App. Ct. 349, 356 (2001), she correctly acknowledged that "even when a zoning board cites no particularized reasons or any specific evidence for its denial decision, its action will be upheld . . . if a rational basis for the denial exists which is supported in the record." She concluded, however, that "[e]ven in applying that deferential standard, this Court can find nothing in the record to support the Board's reasoning for its decision to deny Wendy's special permit and variance request." She ordered the board's 1997 and 1999 decisions annulled insofar as they denied Wendy's a second entrance onto Pollard Street. She also ordered the board "to issue the special permit for construction of the access and egress driveway onto Pollard Street and a variance for green strip and green space requirements at the site."

2. *Regulatory framework.* Before turning to the merits, we briefly describe the regulatory framework governing this appeal. The Zoning Act, G. L. c. 40A (act), sets out, in relevant part, procedures by which a special permit or variance may be obtained, and by which an "aggrieved" party may take an appeal from a zoning decision to the applicable permit granting authority. G. L. c. 40A, § 8. The act requires that a board create "a detailed record of its proceedings" and set forth "clearly" the "reason for its decision and of its official actions." G. L. c. 40A, § 15. The act permits modification, G. L. c. 40A, § 14,[18] and reconsideration, G. L. c. 40A, § 16,[19] of prior decisions. General Laws c. 40A, § 17, in turn, provides that "[a]ny person aggrieved" by a decision of a board of appeals may seek judicial review in the Superior Court.

---

mendations," and that a traffic memorandum prepared by an engineering firm concluded "that the proposed access onto Pollard Street would have a minimal impact on traffic surrounding the site and would have a beneficial impact on Route 3A southbound traffic." The judge also found that Prentiss concluded that the second means of access onto Pollard Street would provide "a safer alternative for left-hand turns out of Wendy's site than what presently exists at the site."

[18]General Laws c. 40A, § 14, states in pertinent part that a board may "modify any order or decision" in connection with "applications for special permits" and "petitions for variances."

[19]Pursuant to G. L. c. 40A, § 16, a board may not act favorably on a reconsideration of an earlier decision for two years, unless the board finds "specific and material changes in the conditions upon which the previous unfavorable action was based."

Review of a board's decision in the Superior Court pursuant to G. L. c. 40A, § 17, involves a "peculiar" combination of de novo and deferential analyses. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 558 (1954).[20] Although fact finding in the Superior Court is de novo, a judge must review with deference legal conclusions within the authority of the board.[21] *Mellendick* v. *Zoning Bd. of Appeals of Edgartown*, 69 Mass. App. Ct. 852, 857 (2007), quoting *Cameron* v. *DiVirgilio*, 55 Mass. App. Ct. 24, 29 (2002) ("reasonable construction that a zoning board of appeals gives to the by-laws it is charged with implementing is entitled to deference"). Among the purposes of the act is to achieve "greater implementation of the powers granted to municipalities," including "restricting, prohibiting, permitting or regulating" the uses of land. St. 1975, c. 808, § 2A. These powers are not to be "narrowly" construed. *Collura* v. *Arlington*, 367 Mass. 881, 885 (1975), citing *Decoulos* v. *Peabody*, 360 Mass. 428, 429 (1971). Deference is also owed to a local zoning board because of its special knowledge of "the history and purpose of its town's zoning by-law." *Duteau* v. *Zoning Bd. of Appeals of Webster*, 47 Mass. App. Ct. 664, 669 (1999). Accordingly, a judge must give "substantial deference" to a board's interpretation of its zoning bylaws and ordinances. *Manning* v. *Boston Redevelopment Auth.*, 400 Mass. 444, 453 (1987). While a judge is to give "no evidentiary weight" to the board's factual findings, the decision of a board "cannot

[20]In this respect, review of board action pursuant to G. L. c. 40A, § 17, differs from judicial review of an administrative action pursuant to G. L. c. 30A, § 14, in which a reviewing court "shall be confined" to the agency record. In contrast, judicial review pursuant to G. L. c. 40A, § 17, requires that "[t]he court shall hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require."

[21]Massachusetts courts have long declined to construe the statutory language "make such other decree as justice and equity may require," G. L. c. 40A, § 17, as permitting a reviewing court "to invade the whole area of administrative discretion." *Board of Appeals of Dedham* v. *Corporation Tifereth Israel*, 7 Mass. App. Ct. 876, 876 (1979). Rather, the phrase merely requires "a decree according to law." *Id.*, quoting *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 558 (1954) (discussing G. L. c. 40A, § 21, now codified at G. L. c. 40A, § 17).

be disturbed unless it is based on a legally untenable ground" or is based on an "unreasonable, whimsical, capricious or arbitrary" exercise of its judgment in applying land use regulation to the facts as found by the judge. *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 487 (1999), quoting *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970); *Zaltman* v. *Board of Appeals of Stoneham*, 357 Mass. 482, 485 (1970). Although the judge determines the facts, it is "the board's evaluation of the seriousness of the problem, not the judge's, which is controlling." *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 488 (1979), quoting *Copley* v. *Board of Appeals of Canton*, 1 Mass. App. Ct. 821, 821 (1973).

Because judicial review of a board's decision "involves a highly deferential bow to local control over community planning," *Britton* v. *Zoning Bd. of Appeals of Gloucester*, 59 Mass. App. Ct. 68, 73 (2003), the power under G. L. c. 40A, § 17, to order a modification of a decision of the board is also constrained: "Modifications and changes should be analyzed and approved by the Board, which is better equipped than a court to consider such matters." *Board of Appeals of Dedham* v. *Corporation Tifereth Israel*, 7 Mass. App. Ct. 876, 876 (1979). However, G. L. c. 40A, § 17, specifically authorizes a court to "make such other decree as justice and equity may require." See note 21, *supra*. In this regard we have approved affirmative relief from the denial by the board where remand to a board would be futile,[22] or

[22]See *Colangelo* v. *Board of Appeals of Lexington*, 407 Mass. 242, 246 (1990) (history of board's actions indicates that basis for denial of special permit, although facially valid, was not genuine); *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 520 (1976) (order of special permit permissible where application for special permit to fill marshland had previously been denied three times on legally untenable grounds); *Quincy* v. *Planning Bd. of Tewksbury*, 39 Mass. App. Ct. 17, 22-24 (1995) (affirming Land Court judgment granting special permit where interests of justice and equity militated against second remand to recalcitrant local board, which had ignored judge's suggestions in previous remand); *Crittenton Hastings House of the Florence Crittenton League* v. *Board of Appeal of Boston*, 25 Mass. App. Ct. 704, 715 (1988) (ordering particular relief because "we do not think that justice would be served by another remand to and third decision from the board"); *Newbury Jr. College* v. *Brookline*, 19 Mass. App. Ct. 197, 208 (1985) (relief issued by court because remand would result in further "obstruction of lawful use" by granting authority).

where it is clear that remand would postpone an inevitable result.[23]

On appellate review, the judge's findings of fact will not be set aside unless they are "clearly erroneous" or there is "no evidence to support them." *DiGiovanni* v. *Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 343 (1985). With respect to conclusions regarding interpretations of a zoning ordinance and their application to the facts, an appellate court remains "highly deferential" to a board's denial decision "even if the facts found by the court would support its issuance." *Britton* v. *Zoning Bd. of Appeals of Gloucester, supra* at 74. However, a board's "discretionary power of denial" is not limitless: it will be upheld "up to those rarely encountered points where no rational view of the facts the court has found supports the board's conclusion." *Id.* at 74-75.

We now turn to the merits.

3. *Jurisdiction pursuant to G. L. c. 40A, § 17.* Only a "person aggrieved" by a decision of a permitting authority has standing to appeal from the decision to the Superior Court. See G. L. c. 40A, § 17; *Sweenie* v. *A.L. Prime Energy Consultants*, 451 Mass. 539, 543 (2008). The board argues that, when the board imposed the single entrance condition in 1992, the "design" of the Boston Road expansion was "in progress" and Wendy's was "aggrieved" by the imposition of a single entrance condition in light of the anticipated 1992 plans for the road expansion. As a consequence, the board claims, Wendy's is "estopped" from appealing from the condition five years later, and the Superior Court was without jurisdiction to review the board's 1997 and 1999 denial of Wendy's modification requests.[24] See G. L. c. 40A, § 17 (appeal must be filed within twenty days of

---

[23]See *Petrucci* v. *Board of Appeals of Westwood*, 45 Mass. App. Ct. 818, 828 (1998) (order of issuance of building permit upheld where it is "clear from the record that the same ultimate result would ensue from an unspecified remand as that effected by the challenged order"); *Selectmen of Stockbridge* v. *Monument Inn, Inc.*, 8 Mass. App. Ct. 158, 163 (1979), quoting *Chira* v. *Planning Bd. of Tisbury*, 3 Mass. App. Ct. 433, 440 (1975) (order to issue building permit permissible where "it is clear from the record that exactly the same ultimate result would occur from a remand as that effected by the decree").

[24]While the board uses the phrase "estopped from appealing" to describe its jurisdictional argument, we employ the more familiar analysis of subject matter jurisdiction.

date decision is filed with town clerk); *Cappuccio* v. *Zoning Bd. of Appeals of Spencer*, 398 Mass. 304, 311 (1986) (court is "without jurisdiction to entertain the appeal" not filed within twenty days).

We are not persuaded for two reasons. First, as the judge found, plans for the actual roadway expansion were far from finalized when the board issued its decision in 1992, and traffic patterns in and around Wendy's changed "significantly" after 1992 as a result of the roadway expansion project and eminent domain taking.[25] Had Wendy's appealed from the board's decision in 1992, Wendy's likely would not have been an "aggrieved party" because any claimed injury from the inchoate roadway project would have been speculative.[26] Cf. *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 323 (1998) ("Injuries that are speculative, remote, and indirect are insufficient to confer standing"). The judge's findings of aggrieved status are "entitled to deference." *Tsagronis* v. *Board of Appeals of Wareham*, 33 Mass. App. Ct. 55, 58-59 (1992), *S.C.*, 415 Mass. 329 (1993); *Paulding* v. *Bruins*, 18 Mass. App. Ct. 707, 709 (1984). See M. Bobrowski, Massachusetts Land Use and Planning Law § 11.03[A], at 342 (2d ed. 2002) ("a finding, after trial, of standing for plaintiffs is best left undisturbed"; where the "judge's findings are supported in the record, the usual standards of appellate review demand deference"). We see no reason to disturb her findings regarding Wendy's standing to pursue its appeals from the board's 1997 and 1999 decisions.

Second, contrary to the board's argument, a board's denial of an application for modification of its decision in light of changed circumstances is reviewable in the Superior Court.[27] We reject

---

[25]The judge found that "the final plans, dates of construction and time of completion were not clear until 1995 or 1996 when the plans were finalized between the Commonwealth and the town" and "it wasn't until that final design that Wendy's became aware of the significant impact the roadway construction would have on access and egress to and from the restaurant site."

[26]The decision in *Iodice* v. *Newton*, 397 Mass. 329 (1986), on which the board relies, differs markedly from this case. There, the permit holder was aggrieved by the decision initially granting the permits, from which it did not timely appeal under G. L. c. 40A, § 17. *Id.* at 333, 334. In contrast, the permit holder here (Wendy's) was aggrieved by the denial of its application for modification in light of changed circumstances, from which it timely appealed.

[27]Citing *Huntington* v. *Zoning Bd. of Appeals of Hadley*, 12 Mass. App. Ct.

454 Mass. 374 (2009)                                      385

Wendy's Old Fashioned Hamburgers of New York, Inc. v. Board of Appeal of Billerica.

the board's assertion that the judge's review of its actions on Wendy's 1997 and 1999 requests for modification is "tantamount to an appeal" of the 1992 special permit and variance, and that the judge "carved out an exception to the 'exclusive remedy' of [G. L.] c. 40A, § 17," that is "without any basis or support in statutory or decisional law." A board "may be asked by a successful petitioner to modify a condition" imposed in a special permit or variance decision in light of changed conditions. M. Bobrowski, Massachusetts Land Use and Planning Law, *supra* at § 10.07[D], at 314. See also G. L. c. 40A, § 14 (board may "modify any order or decision" in connection with "applications for special permits" and "petitions for variances"). And there are multiple cases in which a court has reviewed a modification decision similar to the 1997 and 1999 decisions of the board at issue here. See, e.g., *Barlow* v. *Planning Bd. of Wayland*, 64 Mass. App. Ct. 314, 323 & n.21 (2005) (reviewing "decision of the planning board to deny the application to amend" special permit pursuant to G. L. c. 40A, § 17); *Huntington* v. *Zoning Bd. of Appeals of Hadley*, 12 Mass. App. Ct. 710 (1981) (reviewing grant of modification of existing variance).[28]

4. *Validity of the board's decision.* We now consider whether the judge properly annulled the board's decision denying the requested modifications. General Laws c. 40A, § 15, states that a board "shall" make "a detailed record of its proceedings" setting forth "clearly the reason for its decision and of its official actions." The judge held that the 1997 and 1999 decisions of

710, 714 n.4 (1981), Wendy's claims that a change in circumstances is not a necessary predicate to seeking modification of a zoning decision if the relevant notice and hearing requirements of the act have been satisfied. Because we agree with the judge that there was a change in circumstances after the issuance of the special permit and variance in 1992, we need not address the point.

[28]The board's reliance on *Klein* v. *Planning Bd. of Wrentham*, 31 Mass. App. Ct. 777 (1992), is misplaced. In that case, the Appeals Court held that judicial review of an application for modification under G. L. c. 40A, § 16, was not available for two reasons that do not apply here. First, contrary to the requirements of the statute, "the board was being asked by the plaintiff to act favorably on a request upon which it had acted unfavorably within the two previous years," *id.* at 779, in the absence of a board's finding that there had been "specific and material changes in the conditions upon which the previous unfavorable action was based." Second, the only altered circumstance on which the permit holder relied was a voluntary subdivision of his own property. *Id.*

the board are essentially conclusions with no facts to support them.[29] We agree with the judge that this is insufficient to constitute "substantial facts which rightly can move an impartial mind, acting judicially, to the definite conclusion reached." *Shoppers' World, Inc.* v. *Beacon Terrace Realty, Inc.*, 353 Mass. 63, 67 (1967), quoting *Prusik* v. *Board of Appeal of Boston*, 262 Mass. 451, 457-458 (1928).

As the judge also noted, the board's decisions, set out in full in notes 13 and 15, *supra*, do not qualify as "reasons" within the meaning of G. L. c. 40A, § 15: they contain no explanation or permissible inference as to why a second access from Wendy's on Pollard Street would not be in the best interests of the town or neighborhood,[30] what the detriment to the public good might be, how the modification would undermine the purpose of the zoning bylaws (none of which is specified), or why the degree of traffic problems resulting from a second access is too great a departure from baseline traffic levels. General Laws c. 40A, § 15 (§ 18 of earlier version of G. L. c. 40A), is "not satisfied by a mere repetition of the statutory words." *Shoppers' World, Inc.* v. *Beacon Terrace Realty, Inc.*, *supra*. When a decision contains conclusions that do nothing more than repeat regulatory phrases, and are unsupported by any facts in the record, we are constrained to conclude that the decision is "unreasonable, whimsical, capricious or arbitrary," and therefore invalid. *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 486 (1999), quoting *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970).

The board does not dispute the judge's findings, but asserts

[29]At oral argument counsel for the board conceded that the board "did not make specific factual findings." The only "fact" referenced in the board's decisions refers to a site modification plan: "A Site Modification Plan, dated October 1, 1997, prepared by Frank C. Monteiro, R.P.E., MHF Design Consultants, Inc., 12-B Manor Parkway, Salem, N.H., was submitted to the Board of Appeal and made part of the file."

[30]On appeal, the board appears to contend that "would not be in the best interest of the neighborhood" (as recited in the board's decision) is the same as "further congesting and/or impacting upon the adjacent residential neighborhood" (as the board now argues on appeal). Even under the most "tolerant" standard of review, see *Aldermen of Newton* v. *Maniace*, 429 Mass. 726, 732 (1999) ("reviewing court usually takes a tolerant view" of clear reason "statutory requirement"), the latter does not "clearly" follow from the former. G. L. c. 40A, § 15.

that, despite the weight of the evidence, it properly denied Wendy's requests for modification, pointing (on appeal) to the views of two Pollard Street residents that "traffic would likely increase" as a result of the second exit. These comments were noted in the minutes of the 1997 board meeting, but are not referenced in the board's decision.[31] The argument fails. We are not obliged to search for facts in the record to support a rationale that the board did not itself provide. On review, the judge's role is to determine "whether the reasons given" by the board "had a substantial basis in fact, or were, on the contrary, mere pretexts for arbitrary action or veils for reasons not related to the purposes of the zoning law." *Vazza Props., Inc.* v. *City Council of Woburn*, 1 Mass. App. Ct. 308, 312 (1973). "Reasons given" are a condition precedent to this inquiry; where no such reasons are given, as here, a reviewing court cannot be satisfied that a board's actions are not arbitrary, a pretext, or otherwise impermissible.[32] The "reasons" stated by the board in this case fall far short of the standard required by the act.

5. *Relief.* The board argues that it was error for the judge to order the board to issue a special permit and variance permitting Wendy's to construct a second entrance to its property. We disagree. In the ordinary course, a reviewing judge is reluctant to order a board to implement particular relief, such as to issue a modified special permit and variance. See Massachusetts Zoning Manual § 11.4.1 (Mass. Cont. Legal Educ. 4th ed. 2007)

[31]The minutes of meetings of the board, standing alone, are not admissible "to prove the truth of the evidence before the board recorded in the minutes." *Building Inspector of Chatham* v. *Kendrick*, 17 Mass. App. Ct. 928, 931 (1983). See Massachusetts Zoning Manual § 11.6.13 (Mass. Cont. Legal Educ. 4th ed. 2007) ("The minutes of the municipal board's hearing may be admissible as evidence to prove the matters required by the Zoning Act to be recorded"; it is "possible that public hearing minutes can be used for other evidentiary purposes, if their trustworthiness is established through testimony").

[32]The judge, after weighing the evidence and visiting the site, rejected the speculation of the two Pollard Street residents. She appropriately relied on a report from the town police department pressing no recommendation regarding the proposed second access, and an empirical site impact report by a transportation engineer concluding that "the proposed second access to Wendy's Restaurant will have minimal impacts on traffic surrounding the site." Her findings concerning traffic impact on Pollard Street are not "clearly erroneous," and we will not set them aside. *DiGiovanni* v. *Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 343 (1985).

("An appellant aggrieved by the denial of a special permit or variance should not expect the trial court to order the local board to issue the zoning relief sought"). But an order of particular relief may be appropriate where remand is futile or would postpone an inevitable result. See notes 22 and 23, *supra*. We conclude that remand to the board is not warranted in this case.

As described above, the "reasons" for the board's 1997 and 1999 decisions denying Wendy's requests to modify its special permit and variance are inadequate as a matter of law. For the first time on appeal, the board now suggests that increased traffic on Pollard Street was the "reason" for its decisions denying Wendy's request for modification. Its belated claim finds no support in — and is contraindicated by — the record. Wendy's points out, and the record establishes, that the board granted the owner of an *abutting* property, Christy's Market, "not one but two means of access" onto Pollard Street after the board had denied Wendy's own request.[33] See *Colangelo* v. *Board of Appeals of Lexington*, 407 Mass. 242, 246 (1990) (upholding judge's order to board to issue exemption to zoning bylaw because board approved, "immediately before and after denying the plaintiffs' request, projects which added significantly more traffic"). Here, the judge made specific reference to the abutter's "requests for a special permit and variance [that] were approved by the [b]oard." See B.C. Levey, Massachusetts Zoning and Land Use Law § 7-22, at 195, 196 (1996) ("the general deference afforded actions of a local [special permit granting authority] may yield to a court's sense of fairness" when it appears that special permit granting authority has applied "dramatically different standards to similarly situated applicants"). Moreover, the board denied Wendy's requests in 1997 and 1999 without reference to any traffic impact studies or other reliable information concerning any traffic impact, notwithstanding that the board had before it an empirical traffic survey, which concluded that the proposed second access to Wendy's "will have minimal impacts on traffic surrounding the site." At trial, the

[33]The record establishes that the board permitted the abutting Christy's Market to construct two entrances onto Pollard Street two years *after* the board refused Wendy's request to construct a single entrance onto Pollard Street, and three years before the board again denied Wendy's request.

judge found that the town "did not submit evidence of current traffic patterns on Pollard Street or suggest that the proposed entrance from Wendy's would substantially affect those traffic patterns."

Wendy's claims that a remand to the board "for anything other than administrative or ministerial purposes would be a waste of resources and prolong this matter" because on remand "the salient facts found by the Court would not change."[34] On remand, a board may not ignore or disagree with the specific findings of a reviewing court after a judge has fulfilled her statutory duty to "determine the facts," G. L. c. 40A, § 17. A board may, of course, make "such additional findings as it may wish to make" or any "additional findings suggested by the court's decision." Massachusetts Zoning Manual, *supra* at § 11.6. Here, there is no basis on which the board can make contrary findings regarding the traffic on Pollard Street. As the judge recognized, the director of the town department of public works supported a second entrance from Wendy's onto Pollard Street, the director of the Massachusetts Highway Department approved of a second entrance, and the town traffic safety officer assessed Wendy's proposed plan indicating the Pollard Street access, and did not suggest any changes to the plan. At trial, Wendy's established that a second entrance on to Pollard Street would have a minimal, if any, impact on traffic. The board had the opportunity, but failed to present *any* contrary evidence. In light of this record, a further remand to the board for a third consideration of Wendy's requests for modification is not warranted because it would delay an inevitable result. See *Crittenton Hastings House of the Florence Crittenton League* v. *Board of Appeal of Boston*, 25 Mass. App. Ct. 704, 715 (1988); notes 22 and 23, *supra*, and cases cited therein.

6. *Conclusion.* The judgment of the Superior Court is affirmed.

*So ordered.*

---

[34]Wendy's also claims that there is "at least an inference" that the board denied Wendy's petitions based, in part, on Wendy's challenge to the pro tanto amount in the eminent domain proceeding. See note 10, *supra*. As noted earlier, the eminent domain proceedings and the ones at issue here overlapped. But the judge made no findings pertaining to Wendy's broader claim, and the record does not contain sufficient facts to support it.