AAA NORTHEAST vs. THE PEABODY CITY COUNCIL, MISC 19-000083

































 
 AAA NORTHEAST, Plaintiff, v. THE PEABODY CITY COUNCIL and THOMAS L. GOULD, DAVID C. GRAVEL, ANNE M. MANNING MARTIN, RYAN MELVILL, THOMAS J. ROSSIGNOLL, JON G. TURCO, PETER M. MCGINN, JAMES MOUTSOULAS, EDWARD R. CHAREST, JOEL D. SASLAW, and MARK J. O'NEILL, as they are the members of the PEABODY CITY COUNCIL, Defendants
 MISC 19-000083 
 MARCH 29, 2021
ESSEX, ss.
SPEICHER, J.
DECISION ON MOTION FOR SUMMARY JUDGMENT














 You are less likely to get a hit when you step up to the plate agreeing that you should already have two strikes counted against you, That is the situation in which the Peabody City Council ("City Council") finds itself in this case, in which it concedes that two of the three reasons it gave for denying the plaintiff AAA Northeast's special permit application are factually incorrect and unsupported on the undisputed facts. 





 This matter is before the court on plaintiff AAA Northeast's appeal after remand of a decision of the City Council denying, for a second time, its application for issuance of two related special permits to establish a trucking terminal and truck repair and service facility at its property in a commercially zoned district in the city of Peabody in which "trucking terminal" and "truck repair/servicing" are permitted uses upon issuance of a special permit. After appeal to this court of the City Council's initial denial of AAA Northeast's application for two special permits, which was based on the City Council's finding that the proposed uses would lead to traffic problems, the parties jointly agreed to a remand so that the City Council could reconsider its denial in light of a traffic impact assessment to be provided by AAA Northeast's traffic consultant, and to be peer-reviewed by the City Council's traffic consultant. Following the remand, the City Council held a new public hearing on the application, and again denied the application, but this time for reasons other than expected traffic problems. 





 This court retained jurisdiction, and AAA Northeast filed an amended complaint appealing the decision the City Council had issued after the remand. AAA Northeast subsequently filed a motion for summary judgment challenging the decision issued after the remand. A hearing on the motion was held before me on December 3, 2020, after which I took the motion under advisement. For the reasons stated below, AAA Northeast's motion for summary judgment will be allowed, and the City Council will be ordered to issue the special permits. 





FACTS 





 The following material facts are found in the record, many of them from the statement of facts offered by AAA Northeast and as admitted to by the City Council, for purposes of Mass. R. Civ. P. 56, and are undisputed for the purposes of the pending motion for summary judgment: [Note 1]





THE PARTIES and THE LOCUS 





1. Plaintiff, AAA Northeast, is a Delaware corporation with its principal place of business in Providence, Rhode Island. AAA Northeast is the record owner of the property located at 7 Lakeland Park Drive, Peabody, Massachusetts. ("Property") 





2. Defendant, the city of Peabody City Council, is the designated special permit granting authority pursuant to Section 6.9.6 of the Peabody Zoning Ordinance. ("Ordinance") 





3. The Property is a parcel of approximately 2.7 acres at the end of Lakeland Park Drive in Peabody. The Property is improved by a building that formerly housed a machine shop and by a paved and striped parking area. The Property is located in a Designated Development District ("DDD") under the Ordinance. [Note 2] 





THE ORDINANCE 





4. "Trucking terminals" and "truck services/repair with no outdoor storage," are each uses allowed in the DDD district upon the issuance of a special permit by the City Council. 





5. "Outdoor storage," is defined in the Ordinance as "the keeping of personal or business property or motor vehicles, which is not within a structure with a roof, floor, and at least three (3) sides, all of impervious material." [Note 3] 





6. The outdoor parking of vehicles in conjunction with a trucking terminal use, which is allowed by special permit in the DDD, is not prohibited outdoor storage, nor is the parking of employee vehicles. Generally, the Ordinance provides that, in the DDD district, "Outdoor storage and use is allowed." [Note 4] However, outdoor storage is otherwise prohibited in conjunction with a truck services/repair use, which is formally described in the Ordinance as "Truck Services/Repair, with no Outdoor Storage." [Note 5]





7. The City Council serves as the special permit granting authority under the Ordinance for special permits in the DDD. Section 6.1.2 of the Ordinance generally provides as follows with respect to the City Council's issuance of special permits: 





 No special permit shall be granted unless it is the judgment of the City Council that the use for which the permit is sought will satisfy a desirable local need, that its design and appearance will not be injurious to the established or future character of the vicinity and the neighborhood and that it shall be in harmony with the general purpose and intent of this ordinance. 





THE FIRST SPECIAL PERMIT DECISION 





8. In conjunction with its "AAA" roadside assistance business, on November 27, 2018, AAA Northeast filed an application for two related special permits: (1) a trucking terminal, and (2) truck services/repair with no outdoor storage (collectively, "the Project"). As required by the Ordinance, AAA Northeast filed with its application a site Plan complying with the site plan requirements in the Ordinance. 





9. On January 24, 2019, the City Council conducted a public hearing on the application, at the conclusion of which the City Council voted to deny the application for the two special permits. 





10. On February 1, 2019, the City Council filed its decision with the city clerk. The decision gave three reasons as to why AAA Northeast's application for the two special permits was denied: 





 i. There is no local desirable need for a trucking terminal; 





 ii.The Project will exacerbate trucking and vehicle traffic congestion and lead to further vehicle issues; 





 iii. The Project could lead to further illegal motor vehicle activity in the area.





THE APPEAL AND REMAND 





11. Following AAA Northeast's appeal of the decision to this court, on June 11, 2019, AAA Northeast and the City Council filed a joint motion for remand, by which they jointly requested that this court remand this case to the City Council for further proceedings and asked this court to retain jurisdiction. 





12. Given the emphasis in the decision on traffic issues, AAA Northeast agreed as part of the remand to provide the City Council with a traffic study of the expected traffic impact of the proposed facility, prepared by AAA Northeast's traffic consultant, Vanasse & Associates.





13. AAA Northeast and the City Council further agreed as part of the remand that the City Council would retain a professional traffic engineer to perform a peer review of the Vanasse traffic study, with AAA Northeast reimbursing the City Council up to $2,500.00 for the costs of the peer review. 





14. On June 12, 2019, this court granted the joint motion for remand by issuing an Order of Remand. The Order of Remand stated, in part, that "the court finds that a remand is in the interest of judicial economy and the parties for the City Council to consider the plaintiffs' proposal in light of the traffic study to be provided to the City Council." The Order of Remand did not contemplate or require the filing of a new application or site plan, and further provided that the court would retain jurisdiction in the event that there was an appeal of any revised decision following the remand. 





15. On remand, AAA Northeast provided the City Council with the traffic study, and the traffic study was reviewed by an engineering firm on behalf of the City Council. The City Council subsequently held a public hearing on August 22, 2019. ("Remand Hearing") 





16. At the Remand Hearing, in response to a question about outdoor storage, AAA Northeast responded that only workers' vehicles and service vehicles would be located outside; that there would be no outdoor storage of any other materials (with the exception of a required dumpster); and that there would be no outside storage in connection with the truck servicing/repair use. No one on behalf of AAA Northeast made any statement that reasonably could be construed to the contrary. 





THE REMAND DECISION 





17. At the conclusion of the Remand Hearing, the City Council again voted to deny the requested special permits. The City Council filed the Remand Decision with the city clerk on August 28, 2019. 





18. The Remand Decision abandoned completely two reasons for denial given in the original decision, exacerbation of traffic congestion, and fear of "illegal motor vehicle activity in the area," and instead gave three reasons for denial, as follows: 





 (i) The Site Plan Requirements under Section 6.2.1 have not been met; 





 (ii) The petitioner stated publicly that they planned on having outdoor storage for a period of time, which is not allowable; and 





 (iii) Pursuant to Section 6.1.2, the application does not satisfy a desirable local need, that its design and appearance will be injurious to the established or future character of the vicinity and the neighborhood and that it is not in harmony with the general purpose and intent of the Peabody Zoning Ordinance. 





DISCUSSION 





 "Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law." Ng Bros. Constr. v. Cranney, 436 Mass. 638 , 643-644 (2002); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). "The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact." Ng Bros. Constr. v. Cranney, supra, 436 Mass. at 644. In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. See Attorney Gen. v. Bailey, 386 Mass. 367 , 371, cert. denied, 459 U.S. 970 (1982). Whether a fact is material or not is determined by the substantive law, and "an adverse party may not manufacture disputes by conclusory factual assertions." Ng Bros. Constr. v. Cranney, supra, 436 Mass. at 648. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When appropriate, summary judgment may be entered against the moving party and may be limited to certain issues. Community Nat'l Bank v. Dawes, 369 Mass. 550 , 553 (1976); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). 





 Additionally, "a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." Kourouvacilis v. General Motors Corp., 410 Mass. 706 , 714 (1991). To succeed, the party moving for summary judgment does not need to submit affirmative evidence to negate one or more elements of the opposing party's claim, but the motion must be supported by some material contemplated by Rule 56(c). Id. Though the supporting material offered does not need to disprove an element of the claim of the party who has the burden of proof at trial, it "must demonstrate that proof of that element at trial is unlikely to be forthcoming." Id. 





I. THE FIRST TWO REASONS GIVEN BY THE COUNCIL IN THE REMAND DECISION WERE FACTUALLY INCORRECT AND THE COUNCIL HAS SO CONCEDED. 





 Of the three reasons given for denial in the Remand Decision, the first two pertained not to subjective judgments to be made by the City Council, but to statements of objective fact with respect to AAA Northeast's compliance or lack thereof with the requirements of the Ordinance. The first reason for denial was based on AAA Northeast's alleged failure to submit the required site plan. The second reason for denial was based on AAA Northeast's alleged statement of intention at the Remand Hearing to implement outdoor storage that is not permitted by the Ordinance. 





 On the undisputed facts in the record, neither of the City Council's first two reasons for denial is supported and both are in fact contradicted by the undisputed facts in the record, as the City Council has now conceded. 





 A. AAA Northeast's Application Met the Site Plan Requirements of Section 6.2.1 of the Ordinance, and the City Council Concedes this Fact. 





 The first reason for denial in the Remand Decision was the City Council's finding that the "Site Plan Requirements under Section 6.2.1 have not been met." [Note 6] The Ordinance requires that an applicant seeking a special permit must submit a site plan complying with Section 6.2.1 of the Ordinance, which mandates the submission of a site plan "prepared by a registered architect, registered engineer or registered land surveyor." In compliance with this requirement, prior to the first public hearing, AAA Northeast submitted an engineered site plan in compliance with the requirements of the Ordinance in conjunction with its application for the two requested special permits. This fact is not disputed.





 When this court issued the Remand Order on June 12, 2019, it instructed the City Council to "reconsider its earlier decision in light of an agreement between the parties for the plaintiff to submit a traffic impact assessment and study, and to have the traffic study peer-reviewed by a traffic engineer on behalf of the City Council." It was abundantly clear that the traffic impact study would assess the originally proposed project as proposed in the original application and as shown on the already-submitted site plan. There was no requirement for the filing of a new application or a new site plan. As no change in the site plan was being proposed, it is unclear why any member of the City Council would have expected the submission of a new site plan, and any contention that the City Council was not in possession of a compliant site plan at the time of the Remand Hearing is contradicted by the undisputed facts in the record. [Note 7]





 The City Council does not contest the accuracy or veracity of the affidavit of the city clerk, in which he confirmed that the required number of copies of the site plan was filed by AAA Northeast in conjunction with the original special permit application, and that the site plan was included in the materials provided to the City Council for the original public hearing. [Note 8] Additionally, a copy of the site plan was included in the Vanasse & Associates Traffic Impact Assessment submitted by AAA Northeast to the City Council prior to the Remand Hearing. [Note 9] The City Council therefore had access to the site plan at the Remand Hearing from multiple sources, and any assertions to the contrary are simply incorrect, and the City Council at the hearing on the present motion did not contend otherwise. It is clear that AAA Northeast satisfied the site plan submission requirements when it included the site plan along with its application prior to the first special permit hearing. 





 As to whether the site plan filed by AAA Northeast as part of its original filing complied with section 6.2.1 of the Ordinance, the original special permit decision is itself telling. In it, the City Council did not make any finding that the site plan requirements under 6.2.1 of the Ordinance had not been satisfied; rather, the City Council denied the application on other grounds, namely that the Project would increase traffic congestion around the locus as well as the City Council's expressed concern that the Project would lead to illegal motor activity in the vicinity. The proposition that the site plan requirement had not been satisfied in AAA Northeast's application was only raised by the City Council in the Remand Decision. As no objection was made to AAA Northeast's site plan in the City Council's original consideration of the application, this court finds as the law of the case that the site plan had indeed been submitted and that it satisfied the requirements of Section 6.2.1 of the Ordinance. Buttressing this conclusion, a member of the City Council has admitted to the error in concluding that the site plan requirements had not been satisfied; the City Council does not now contend otherwise. [Note 10] 





 For these reasons, the court finds that the City Council's finding that the "Site Plan Requirements under Section 6.2.1 [had] not been met" was erroneous and arbitrary and capricious. 





 B. There Is No Support on the Undisputed Facts for the City Council's Conclusion that AAA Northeast Planned to Violate the Prohibition Against Outdoor Storage. 





 The second reason for denial of the application following the Remand Hearing was the City Council's finding that AAA Northeast stated publicly that it "planned on having outdoor storage for a period of time, which is not allowable..." [Note 11] 





 To address this point, the court returns to the requirements of the DDD as specified in the Ordinance. Generally, outdoor uses, such as trucking terminals, are permitted within the DDD, and outdoor storage as part of such uses is permitted unless otherwise expressly prohibited, as it is for trucking service and repair facilities. [Note 12] In its application, both as first proposed and following the remand, AAA Northeast sought two special permits: one for a "Trucking Terminal" and the other for "Truck Services/Repair with No Outdoor Storage." The Ordinance allows outdoor use and storage for trucking terminals, but prohibits outdoor storage in conjunction with the proposed "Truck Services/Repair with No Outdoor Storage" [Note 13] At both the original public hearing and at the Remand Hearing, AAA Northeast stated, consistently with its application, that fleet vehicles and employees' vehicles would be parked outdoors on the premises, as is permitted in the DDD for trucking terminals and for truck repair and service uses, 

but that no outdoor storage of materials or inoperable vehicles or other prohibited items would take place on the Property in conjunction with the uses proposed for the Property, with the exception of a required dumpster. [Note 14] AAA Northeast's assertion at the Remand Hearing that "there would be no outside storage whatsoever in connection with the truck servicing/repair use" is admitted to be correct by the City Council. [Note 15] There is no suggestion otherwise in the transcript of the Remand Hearing. AAA Northeast never stated that it intended to rely on outdoor storage, temporary or otherwise, for the Truck Services/Repair use. In fact, the only time outdoor use was mentioned was in relation to employee parking and AAA Northeast's truck fleet being parked in the truck lot as part of the trucking terminal use. [Note 16] 





 Again, the City Council agrees that employee parking, and parking of the truck fleet outdoors, is permitted in the DDD for the proposed uses. [Note 17] The factual record clearly establishes that AAA Northeast made no proposal for prohibited outdoor storage. [Note 18] Therefore, the second reason in the City Council's Remand Decision denying AAA Northeast's application was clearly erroneous and arbitrary and capricious. 





II. THE COUNCIL'S THIRD REASON FOR DENIAL IN THE REMAND DECISION CONSISTED ENTIRELY OF CONCLUSORY STATEMENTS PARROTING THE STANDARDS IN THE ORDINANCE WITH NO FACTUAL FINDINGS TO SUPPORT THE STATED CONCLUSIONS. 





 "General Laws c. 40A, § 9 requires the board to make a detailed record of its proceedings clearly setting forth the reason for its decision." Efekta School, Inc. v. City of Cambridge, 66 Mass. App. Ct. 1113 , *3 (2006) (Rule 1:28 Unpublished Decision), citing Sheehan v, Zoning Bd. of Appeals of Plymouth, 65 Mass. App. Ct. 52 , 55-56 (2005). When granting a special permit, the board must "set forth the reasons for its decision that [the] proposed development meets the applicable statutory and bylaw standards...including affirmative findings as to the existence of each condition required for the granting of the special permit." Sheehan v. Zoning Bd. of Appeals of Plymouth, supra, 65 Mass. App. Ct. at 55--56. Failure to make such findings upon grant of a special permit can result in annulment of the board's decision. 





 Similarly, while the requirement for specific findings is less stringent when denying a special permit, a special permit granting authority may not merely repeat conclusory standards in the bylaw or ordinance with no factual findings at all to support a conclusion that the standards for the granting of a special permit have not been met. "When a decision contains conclusions that do nothing more than repeat regulatory phrases, and are unsupported by any facts in the record, [the court is] constrained to conclude that the decision is 'unreasonable, whimsical, capricious or arbitrary,' and therefore invalid." Wendy's Old Fashioned Hamburgers of New York, Inc. v. Bd. of Appeal of Billerica, 454 Mass. 374 ,386 (2009). "On review, the judge's role is to determine 'whether the reasons given by the board, 'had a substantial basis in fact, or were, on the contrary, mere pretexts for arbitrary action or veils for reasons not related to the purposes of the zoning law'... [W]here no such reasons are given ... a reviewing court cannot be satisfied that a board's actions are not arbitrary, a pretext, or otherwise impermissible." Id. at 387, quoting in part, Vazza Properties, Inc. v. City Council of Woburn, 1 Mass. App. Ct. 308 , 312 (1973). 





 The City Council is tasked with determining whether a proposal for which a special permit is sought, "will satisfy a desirable local need, that its design and appearance will not be injurious to the established or future character of the vicinity and the neighborhood and that it shall be in harmony with the general purpose and intent of this ordinance." [Note 19] The third and final basis for the City Council's decision to deny the special permits was its finding that, "Pursuant to Section 6.1.2, the application does not satisfy a desirable local need, that its design and appearance will be injurious to the established or future character of the vicinity and the neighborhood and that it is not in harmony with the general purpose and intent of the Peabody Zoning Ordinance." [Note 20] No other specifics by the City Council were given, and no findings that could arguably support the City Council's conclusion were made by the City Council in its decision. 





 This is exactly the type of conclusory, parroting of the statutory standard without any factual support that the court cautioned against in Wendy's Old Fashioned Hamburgers of New York, Inc. v. Bd. of Appeal of Billerica, supra. The City Council offered no factual support or analysis, nor did it attempt to articulate how AAA Northeast's proposed trucking terminal would be out of harmony with the community, how it would be injurious to the community, or why the proposed trucking terminal and service and repair facility failed to serve a need in the community. On the contrary, the only thing that the City Council did was repeat the regulatory language of Section 6.1.2 of the Ordinance. This regulatory regurgitation, devoid of any factual support, falls well below the standard for rendering a valid denial of a special permit. See Wendys Old Fashioned Hamburgers of New York, Inc. v. Bd. of Appeal of Billerica, supra, 454 Mass at 387 (the reasons supporting the decision must be set forth in the decision itself and not elsewhere, such as in board meeting minutes). As a rule, a special permit granting authority "is free to deny a special permit even if the facts show that such a permit could be lawfully granted." Pioneer Home Sponsors, Inc. v. Bd. of Appeals of Northampton, 1 Mass. App. Ct. 830 , 830 (1973). However, this court finds that the City Council's denial was not rationally supported by any facts in the record. As there is no credible evidence to support a finding that the factors for issuance of a special permit were not met, and as the reasons given by the City Council were either factually incorrect or were merely conclusory in nature, the denial must be annulled. See Shirley Wayside Ltd. Partnership v. Bd. of Appeals of Shirley, 461 Mass. 469 , 485 (2012). Simply, the City Council's conclusory statement masquerading as a finding in the Remand Decision does not meet the very low bar for findings supporting a denial. 





III. ON THE UNDISPUTED EVIDENCE, THE PROPOSAL MET THE STANDARDS OF THE ORDINANCE, AND THERE WAS NO TRAFFIC PROBLEM. 





 The City Council rightly does not argue that exacerbation of traffic problems or illegal motor vehicle activity in the vicinity of the Property would be a proper ground for affirming the denial issued by the City Council after the Remand Hearing. Although these were given as two reasons for denial after the first hearing, the City Council waived traffic problems and "illegal motor vehicle activity in the area" as reasons for denial by failing to include them as reasons for denial following the Remand Hearing. And in any event, a denial on such grounds would not have been supported by the record. The reason for the remand was so that AAA Northeast could demonstrate to the City Council that the proposed uses would not exacerbate any traffic-related problems in the vicinity of the Property. To facilitate discussion of this issue AAA Northeast agreed to submit a traffic impact study prepared by its traffic consultant Vanasse & Associates, and it further agreed to have the study peer-reviewed, at its expense, by the City Council's traffic consultant. The review resulted in a determination that was to the satisfaction of the City Council and its consultant on the issue of traffic, and the City Council does not contend otherwise. [Note 21] To the extent the City Council might contend (although it does not appear to do so) that traffic problems provide a basis for the generalized conclusory grounds for denial discussed above, there is no support in the record, and the City Council points to none, for such a conclusion. Neither exacerbation of traffic problems in the neighborhood nor expected increased illegal motor vehicle activity in the area was given as a reason for denial, and there is no support for such grounds for denial had they been given as reasons. Where expected traffic problems were not raised as an issue in the Remand Decision, they may not be raised in this appeal. See Wendy's Old Fashioned Hamburgers of New York, Inc. v. Bd. of Appeal of Billerica, supra, 454 Mass. 374 at 87 (court not obliged to consider reasons for denial not included in board's decision). 





CONCLUSION 





 For the foregoing reasons, I find and rule that the City Council's decision was legally untenable, arbitrary, capricious, unreasonable, and otherwise beyond the proper exercise of the City Council's lawful authority. The decision of the City Council after remand is therefore ANNULLED. 





 Furthermore, because on the undisputed facts in the record in this matter, "no rational view of the facts the court has found supports the [special permit granting authority]'s conclusion that the applicant failed to meet one or more of the relevant criteria found in the governing statute or bylaw," Britton v. Zoning Bd. of Appeals of Gloucester, supra, 59 Mass. App. Ct. at 74-75, an order requiring the issuance of the requested special permits is appropriate. An order for the issuance of a special permit is "appropriate where remand is futile or would postpone an inevitable result." Wendy's Old Fashioned Hamburgers of New York, Inc. v. Bd. of Appeal of Billerica, supra, 454 Mass. 374 at 388. This is especially true where the futility of a remand has been demonstrated by a previous remand. Id. See also Shirley Wayside Limited Partnership v. Bd. of Appeals of Shirley, supra, 461 Mass, at 474, 485. Certainly a second remand in this matter would be futile where the City Council has demonstrated its willingness to deny the requested special permits notwithstanding its concession in this court that two of the reasons upon which it relied in denying the special permits after the first remand were without basis. 





 Judgment will enter annulling the decision of the City Council and ordering the issuance of the requested special permits. 





FOOTNOTES
[Note 1] Additional undisputed facts are referenced in the discussion section, infra. 

[Note 2] Appendix, Exh. 3, "Site Development Permit Plan," dated December 5, 2018. 

[Note 3] Appendix, Exh. 1, Ordinance, Section 2. 

[Note 4] Appendix, Exh. 1, Ordinance, Section 3.2.11. 

[Note 5] Appendix, Exh, 1, Ordinance, Section 6.6.4.B.12. 

[Note 6] Appendix, Exh, 11, Decision of City Council after remand, dated August 28, 2019, filed with city clerk August 28, 2019. 

[Note 7] Statement of Facts and Defendants' Response, ¶¶ 15, 16, 17. 

[Note 8] Appendix, Exh. 14, Affidavit of Timothy E. Spanos, City Clerk. 

[Note 9] Appendix, Exh. 8, Traffic Impact Assessment, dated June 18, 2019. 

[Note 10] Appendix, Exh. 18. Deposition of Joel D. Saslaw. Page 170: 



 Q: Mr. Saslaw, sitting here today, you agree that the reason for denial set forth in paragraph 1 on [the Remand Decision] was not a valid basis for the denial of the special permit; is that correct? 





 Councilor Saslaw: What I know today, yes. 





 Q: Because AAA Northeast has in fact met the site plan requirements under Section 6.2.1 of the Ordinance relative to its application for a special permit, correct? 





 Councilor Saslaw: Yes. 



[Note 11] Appendix, Exh. 11. 

[Note 12] Appendix, Exh. 1, Ordinance, Sections 3.2.11, 6.6.4. 

[Note 13] Id. 

[Note 14] Statement of Facts and Defendants' Response, ¶¶20, 40. 

[Note 15] Statement of Facts and Defendants' Response, ¶ 40. 

[Note 16] Appendix, Exh. 16, Public Hearing Transcript, pp. 54-55. 

[Note 17] In a deposition, a member of the City Council who proposed and voted for the denial at the Remand Hearing, conceded that "employee parking would be permitted," and that trucking terminals may be permitted by special permit as an outdoor use in the DDD. Appendix, Exh. 18, p. 172. 

[Note 18] Appendix, Exh. 16. 

[Note 19] Appendix, Exh. 1, Ordinance, Section 6.1.2. 

[Note 20] Appendix, Exh. 11. 

[Note 21] Statement of Facts and Defendants Response, ¶ 24. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.