Town of Uxbridge *vs.* Stephen M. Griff
(and a companion case[1]).

Nos. 06-P-64 & 06-P-340.

Worcester. December 11, 2006. - February 6, 2007.

Present: DOERFER, BROWN, & COHEN, JJ.

*Zoning*, Appeal, Permitted use. *Contempt. Practice, Civil,* Zoning appeal, Contempt.

In a civil action claiming that the defendant's use of his property violated the plaintiff town's zoning bylaw, there was sufficient evidence to support the judge's ruling that the defendant's use of his land to operate a motorcycle cross country practice facility was not permitted in an industrial district, nor could the use be protected as a permitted use in a business district [175-178]; further, there was no merit to the defendant's argument that an order permanently enjoining him from using the premises as a motorsports track was not clear and unequivocal [178-179].

A Superior Court judge properly found the defendant in civil contempt of a preliminary injunction enjoining him from using his land to operate a motorcycle cross country practice facility, where the plaintiff town filed its complaint for contempt prior to the entry of final judgment, when the preliminary injunction was still in force. [179]

CIVIL ACTION commenced in the Superior Court Department on December 3, 2001.

The case was heard by *Robert A. Cornetta,* J., and a complaint for contempt, filed on June 6, 2005, was also heard by him.

CIVIL ACTION commenced in the Superior Court Department on February 6, 2002.

The case was heard by *Robert A. Cornetta,* J.

*Judith C. Cutler (Jackie Cowin* with her) for town of Uxbridge.

*Stephen J. Gordon* for Stephen M. Griff.

DOERFER, J. These are related appeals arising out of a

[1]Stephen M. Griff *vs.* Zoning Board of Appeals of Uxbridge & another.

controversy between the town of Uxbridge (town) and Stephen M. Griff over his use of his land to operate a motorcycle cross country (motocross) practice course.[2] The town, claiming that his use was a violation of the town's zoning bylaw, brought an enforcement action in Superior Court against Griff and obtained injunctive relief, from which Griff appeals. In a related action, Griff appealed the decision of the town's zoning board of appeals (board) in the underlying zoning matter to the Superior Court; Griff appeals from the ruling in favor of the town. We agree with the town that Griff's appeal of the action of the board was not perfected and must be dismissed.[3] Nevertheless, we address the controlling legal issue raised in that appeal, whether the town's bylaw permitted Griff to use his land as a motocross practice track and training facility (facility), because that issue bears on our decision in the remaining appeal.

*Permitted use.* The land in question is located in an industrial district as defined in § VII(e) of the bylaw, which states in material part:

> "In . . . INDUSTRIAL districts, the following uses of land, buildings and structures shall be permitted:
>
> "1. Any use permitted in BUSINESS districts, exclusive of dwellings; . . .

---

[2]Griff testified that he is the owner of the Uxbridge Motorsports Park, which is a commercial motorcycle practice facility that is open to the general public for practice and lessons on a dirt course, seven-tenths of a mile long and twenty feet wide with various jumps and corners.

[3]Griff failed to file a notice of the action with the town clerk as required by G. L. c. 40A, § 17. Failure to comply with this jurisdictional requirement means that the Superior Court lacked jurisdiction over the zoning appeal. See, e.g., *County of Norfolk* v. *Zoning Bd. of Appeals of Walpole*, 16 Mass. App. Ct. 930, 930 (1983); *Bingham* v. *City Council of Fitchburg*, 52 Mass. App. Ct. 566, 568 (2001), quoting from *Konover Mgmt. Corp.* v. *Planning Bd. of Auburn*, 32 Mass. App. Ct. 319, 322-323 (1992) ("Receipt of notice by a city clerk is a prerequisite 'for an action under G. L. c. 40A, § 17, which the courts have "policed in the strongest way" and given "strict enforcement" ' "). Decisions cited by Griff are easily distinguished, as the plaintiffs in those cases had met the jurisdictional prerequisite by filing a notice with the town or city clerk. See *Pierce* v. *Board of Appeals of Carver*, 369 Mass. 804, 808 (1976); *Twomey* v. *Board of Appeals of Medford*, 7 Mass. App. Ct. 770, 772, 773 (1979). The issues addressed in those cases related to other procedural lapses.

"3. Any other lawful industrial use which is not dangerous by reason of fire, explosion or other hazards, or injurious, noxious or detrimental to the Town of Uxbridge or its populace by reason of emission of dust, odors, gas, smoke, vibration or some other nuisance. . . ."

At trial, Griff testified that 250 people come to the facility each week, with up to 100 people on certain days, and that as many as forty to fifty people use the track at the same time. The facility opens as early as 8:00 A.M. for classes and closes at 8:00 P.M. or dusk, whichever is earlier. He admitted that the riding is noisy and that there are "sound issues," for which he proposed to install a sound barrier.

Other witnesses (including a direct abutter, a person who lived more than one mile away from the facility, and a police officer) testified about the noise, other concerns, and dangers associated with the facility. The abutter and distant neighbor discussed how the "unbearable" noise affected their ability to be outdoors and enjoy their property. The abutter had filed several complaints about the facility with the police, the board of health, and the board of selectmen. There was testimony relating to problems with dust generated from the facility, such that the abutter's cars were often covered with one-quarter inch of dust and the dust was always in her house. In addition, the abutter had, in the past, observed patrons parking on her property, using her property for restroom facilities, and changing clothes in public. The police officer identified various complaints related to loud noise, general disturbance, operation of heavy equipment, medical assistance, parking issues, and dust at the facility. He had personally responded to some of these complaints and equated the noise "to a number of chainsaws running at the same time." Moreover, there was testimony of numerous crashes and injuries at the facility, including one death after a crash.

These facts support the ruling of the court that the use was not permitted in an industrial zone.[4] As reflected in the bylaw, set forth *supra*, any use that is "injurious, noxious or detrimental

---

[4]In both the original judgment and the amended judgment, the judge identi-

to the Town of Uxbridge or its populace by reason of emission of dust . . . or some other nuisance" is not permitted in an industrial zone. The noise alone was noxious, and is a commonly understood justification for regulating the use of land to limit this type of nuisance. See *Boston* v. *Back Bay Cultural Assn.*, 418 Mass. 175, 180 (1994), quoting from *Ward* v. *Rock Against Racism*, 491 U.S. 781, 796 (1989) ("the city 'ha[s] a substantial interest in protecting its citizens from unwelcome noise' "); *Kinchla* v. *Board of Appeals of Falmouth*, 11 Mass. App. Ct. 927, 927 (1981) (board of appeals did not exceed its authority in denying a motel a special permit to build an outdoor swimming pool, based on its conclusion that noise generated by people using the proposed pool would have an adverse effect on the neighborhood); *McIntyre* v. *Selectmen of Ashby*, 31 Mass. App. Ct. 735, 736, 741-742 (1992) (no error of law where a board of selectmen found that noise and dust created by the proposed excavation activity would constitute a nuisance and be detrimental to the adjacent property and neighborhood).[5] There was also evidence supporting an inference that the activity conducted on the land was dangerous. Such a use is not permitted as of right in an industrial zone.

Nor can these activities be protected as a permitted use in a

fied the trial evidence as a basis for his findings, rulings, and order. As so stated by the judge, observations made (after issuing the original judgment) during a view of the property did not affect the ultimate decision-making process in ruling on the case according to applicable law. There was no error. Furthermore, the judge's decision is supported by sufficiently detailed factual findings necessary to address the legal issue presented. See *Willis* v. *Selectmen of Easton*, 405 Mass. 159, 161 (1989) (Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974], "does not require extensive detail and only imposes a duty on a judge to articulate the essential grounds for a decision"); *New England Fin. Resources, Inc.* v. *Coulouras*, 30 Mass. App. Ct. 140, 147 (1991). See also *Salah* v. *Board of Appeals of Canton*, 2 Mass. App. Ct. 488, 492 (1974) (determining the meaning of a term in a zoning bylaw is a question of law for the court).

[5]See also Black's Law Dictionary 1096 (8th ed. 2004), where "noxious" is defined as "1. Harmful to health; injurious. 2. Unwholesome; corruptive"; and "nuisance" is defined as "1. A condition, activity, or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property; esp., a nontransitory condition or persistent activity that either injures the physical condition of adjacent land or interferes with its use or with the enjoyment of easements on the land or of public highways."

business district.[6] To the extent that Griff wished to characterize the use of the land as "similar" to permitted uses in a business district, he had the right to petition the board for such a determination under § VII(d)(6) of the bylaw. This he did not successfully do.

*Other issues.* We reject Griff's argument that the order set forth in the amended judgment of July 26, 2005, is not clear and unequivocal. See *Oakham Sand & Gravel Corp.* v. *Oakham,* 54 Mass. App. Ct. 80, 86 (2002), quoting from *Demoulas* v. *Demoulas Super Mkts., Inc.,* 424 Mass. 501, 565 (1997) (to justify an order of contempt, there must be a "clear and unequivocal command"). In clear and unequivocal language, the order permanently enjoins Griff "from using the premises . . . as a motorsports track" and provides for ninety days to remove all improvements associated with such use.[7] See *id.* at 86-87, quoting from *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. 430, 448 (1997) ("Findings of contempt have been upheld 'where an order, although subject to some legal interpretation, has nonetheless provided sufficient notice to the party bound by the order that its actions could form the basis for contempt' "). Even if Griff is truly confused by the order, he bears the responsibility of obtaining clarification before undertaking conduct that is questionable under the terms of the order. See

---

[6]According to § VII(d) of the bylaw, the permitted uses in a business district are (1) any of the usual wholesale and retail stores that normally serve the shopping needs of the residential population; (2) personal service establishments dealing directly with the consumer (specifically, barber shops, beauty shops, beauty parlors, diners, laundromats, dry cleaning establishments, gasoline and oil filling stations, and any other ordinary businesses of like nature); (3) offices and banks, theaters, bowling alleys, billiard rooms, lumber, fuel and ice establishments, and motels or hotels (that are at least 150 feet from any permanent residential building); (4) garaging and maintaining more than three automobiles of the passenger type; (5) retail trade or shops for custom work of the manufacturing of articles incidental to a retail business, lawfully conducted on the premises, except where it would create a nuisance or become hazardous; (6) any use of similar nature as determined by the board following a petition by the landowner; and (7) any use accessory to the foregoing.

[7]The briefs and record appendix demonstrate that any typographical errors, including differences between docket dates and issuance dates, have been corrected and, in any event, do not form a sufficient basis for a substantive argument of ambiguity based upon this order.

*Coyne Industrial Laundry of Schenectady, Inc.* v. *Gould,* 359 Mass. 269, 275-276 (1971); *Labor Relations Commn.* v. *Boston Teachers Union, Local 66,* 374 Mass. 79, 91 (1977); *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. at 451.

In the amended judgment, the trial judge found Griff in civil contempt for operating the motocross track over Memorial Day weekend, 2005, in violation of the preliminary injunction ordered by the court on March 16, 2005. Griff does not contest the contempt finding on its merits.[8] Rather, he claims that as the town filed its complaint for contempt after the trial was complete, the preliminary injunction lapsed upon the entry of the final judgment. Therefore, he argues, there was no basis for a contempt action against Griff after the final entry of judgment. See *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 2),* 424 Mass. 471, 472 (1997) ("A preliminary injunction lapses when a final decree is entered"). However, we observe that here the town filed its complaint for contempt prior to the entry of final judgment, when the preliminary injunction was still in force. Compare cases such as *Carlson* v. *Lawrence H. Oppenheim Co.,* 334 Mass. 462, 464 (1956); *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 2),* 424 Mass. at 472, that address postjudgment attempts to challenge or enforce preliminary injunctions *after* they had already lapsed. There was no error in finding Griff in civil contempt of the court's outstanding order.

In civil action no. 2001-2487-B, the amended judgment dated July 26, 2005, is affirmed. In civil action no. 2002-294-B, the appeal is dismissed.

*So ordered.*

---

[8]Griff, represented by counsel, had the benefit of an evidentiary hearing on the complaint for civil contempt.