NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-556                                          Appeals Court


WENDY LEE, trustee,[1] & another[2]  vs.  TAO CAI, trustee.[3]


No. 22-P-556.

Suffolk.     December 2, 2022. – April 6, 2023.

Present:  Massing, Grant, & D'Angelo, JJ.


Zoning, Board of appeals:  decision, Issuance of permit,
     Conditions, Hearing, Building permit.  Building Permit.
     Real Property, Flowage of water.  Boston Water and Sewer
     Commission.  Boston.


Civil action commenced in the Superior Court Department on
September 19, 2019.

The case was heard by Janet L. Sanders, J.


Lane N. Goldberg for the defendant.
Bethany Y. Li for the plaintiffs.


_____

     [1] Of the Wendy and John Lee Family Wealth Trust.

     [2] John Lee, as trustee of the Wendy and John Lee Family
Wealth Trust.

     [3] Of the Johnny Court Realty Trust.  The zoning board of
appeal of Boston, a defendant in the trial court, is not a party
to this appeal.

D'ANGELO, J.  As trustee of a realty trust, Tao Cai proposes to convert a two-unit rowhouse in Boston's Chinatown neighborhood to a five-unit residential dwelling.  Cai planned to reconfigure the existing units and add two additional stories with a roof deck.  The building, 9 Johnny Court, lies in the Chinatown zoning district and the groundwater conservation overlay district (GCOD).[4]  The city's zoning board of appeal (board) granted Cai a conditional use permit authorizing the project.  The direct abutters at 7 Johnny Court, Wendy and John Lee, as trustees of the Wendy and John Lee Family Wealth Trust (Lee Trust), appealed from that decision to the Superior Court pursuant to St. 1956, c. 665, § 11, as amended through St. 1993, c. 461, § 5.  After a three-day jury-waived trial, a Superior Court judge concluded that Cai had not shown that the planned project complied with the requirements for a conditional use permit under Article 6 and Article 32 of the city's zoning code (zoning code), and vacated the permit.  Cai appeals, and we affirm the judgment.

Background.  The facts are derived from the judge's findings after trial and our own review of the documentary evidence submitted by the parties.

---

[4] Article 32 of the city's zoning code governs the GCOD.  We refer to Article 32 and the GCOD interchangeably.

1.  The properties.  The parties' properties are two of five connected brick row houses that are each two and one-half stories high.  Cai, as trustee of the Johnny Court Realty Trust, owns 9 Johnny Court, and the Lees, as trustees of the Lee Trust, own 7 Johnny Court; the two houses share a common wall, known as a party wall, which supports both structures, and they also share a fire escape.

a.  History of the properties.  The parties' houses were constructed over one hundred years ago on land that was once covered with water but was filled over subsequent years.  Structures in such filled areas were commonly constructed on wooden piles, and it became imperative to maintain groundwater levels in order to prevent deterioration of the piles.  There is evidence that the parties' houses have "settled in an uneven fashion," and the interior windows of 7 Johnny Court are "off kilter."  The judge found that "[b]ecause of the unique risk of the building and areas built on filled land, the Boston City Council created the Groundwater Trust, a body tasked with investigating, monitoring, and recommending solutions to deal with falling groundwater levels."  That ultimately led to the adoption in 2006 of Article 32 of the zoning code, the GCOD.  See Perry v. Board of Appeal of Boston, 100 Mass. App. Ct. 138, 139-140 (2021).

    b. <u>Groundwater conservation overlay district</u>. "[T]he stated purposes of the GCOD are to '(a) prevent the deterioration of and, where necessary, promote the restoration of, groundwater levels in the city of Boston; (b) protect and enhance the city's historic neighborhoods and structures, and otherwise conserve the value of its land and buildings; (c) reduce surface water runoff and water pollution; and (d) maintain public safety.'" <u>Perry</u>, 100 Mass. App. Ct. at 140, quoting Article 32, § 32-1. Thus, projects in the GCOD and subject to that article[5] must be designed to "promote infiltration of rainwater into the ground by capturing within a suitably-designed system a volume of rainfall on the lot equivalent to no less than 1.0 inches across that area of the lot occupied by structures or other impervious surface." Article 32, § 32-6(a).

    Article 32, § 32-5, of the zoning code also requires that a project regulated by that article obtain a conditional use permit. Article 6, § 6-3, of the zoning code lists the criteria required for approval of a conditional use permit, which include, among others, that

---

[5] Projects that propose to erect or extend "any structure, where such new structure or extension will occupy more than fifty (50) square feet of lot area" or to substantially rehabilitate a structure must comply with Article 32. Article 32, § 32-4(a), (c).

"(a) the specific site is an appropriate location for such use . . . ; (b) the use will not adversely affect the neighborhood; (c) there will be no serious hazard to vehicles or pedestrians from the use; (d) no nuisance will be created by the use; [and] (e) adequate and appropriate facilities will be provided for the proper operation of the use."

2. The procedural history of the project. Cai's proposed project (proposed project) included a two-story vertical addition to the building at 9 Johnny Court and renovation of the existing units.[6] Cai submitted relevant plans to the city's water and sewer commission and then to the board. After reviewing the plans, a design engineer for the water and sewer commission concluded that the plans met the groundwater storage and recharge requirements of the GCOD. Thereafter, the board conducted a hearing, took a view of the site, and ultimately approved the proposed project, concluding that the infiltration system that Cai proposed to install at 9 Johnny Court met the requirements of the GCOD.

In addition, the board determined that the provisions of the GCOD required Cai to satisfy the requirements for a conditional use permit pursuant to Article 6 of the zoning code. See Article 32, § 32-3(3). See also Perry, 100 Mass. App. Ct.

---

[6] Cai's original plan called for the addition of two stories to the original building and a five-story addition to the rear of 9 Johnny Court, extending the structure into the back yard. He abandoned plans for the rear addition, which would have required a variance.

at 140. The board concluded that the proposed "project is an appropriate use of the lot and will not adversely affect the community or create any detriment for abutting residents," and that "all of the conditions for the grant of a Conditional Use Permit have been met."

The Lees appealed to the Superior Court pursuant to St. 1956, c. 665, § 11, as amended through St. 1993, c. 461, § 5. See Crittenton Hastings House of the Florence Crittenton League v. Board of Appeal of Boston, 25 Mass. App. Ct. 704, 705, 711-712 (1988). In December 2021, a jury-waived trial was conducted as to the proposed project's compliance with the GCOD and Article 6. Prior to trial, Cai objected to the admission in evidence of Article 43 of the zoning code, which pertains to the Chinatown zoning district, arguing that it was not relevant "[a]s there are no violations pursuant to Article 43." Article 43 was never introduced or admitted in evidence during the trial. After the close of evidence, Cai submitted proposed rulings of law to which he attached a copy of Article 43, and he argued that that the proposed project was a residential use allowed as of right under that article.

On December 22, 2021, at a hearing, the judge issued her findings of fact and rulings of law by dictating them into the record. She found that the proposed rainwater infiltration system was adequate to recharge the groundwater. She concluded,

as the board had, that pursuant to Article 32, Cai was required to obtain a conditional use permit for the proposed project. However, unlike the board, the judge concluded that Cai had not met the requirements to obtain one. Based on expert testimony, the judge concluded that "there's a real risk of structural damage to 7 Johnny Court if two stories are added to 9 Johnny Court." The judge explained that "[t]he additional stories would increase the load of the structure and this load would be distributed out to the party wall that [9 Johnny Court] shares with 7 Johnny Court." The judge further concluded that "[s]ince there was already evidence of settlement of the row houses as they currently exist, the risk that such damage could occur if two additional stories were added to 9 Johnny Court is more than just speculative. It is quite likely." Moreover, the judge found that adding two stories to 9 Johnny Court would cause rain and snow to accumulate in greater amounts on the roof of 7 Johnny Court and such "accumulation could cause water issues inside that row house, depending on how watertight it was, and it could put pressure on the area where 7 Johnny Court's roof meets the wall that would be constructed at 9 Johnny Court for the additional stories." The judge also found that there could be flooding into the basement of 7 Johnny Court. For these reasons, the judge concluded that "the [proposed] project does not comply with Article [6,] [§ ]6-3 of the [zoning] code."

Furthermore, the judge found that by failing to consider these issues, and essentially leaving it for other officials to determine at a later time the impacts on 7 Johnny Court, the board had "impermissibly delegate[d] [its] authority to determine, in the first instance, whether a project complies with the [zoning code]." The judge vacated the conditional use permit. This appeal ensued.

Discussion. In reviewing a judge's decision on a conditional use permit or special permit, we apply a "peculiar combination of de novo and deferential analyses" (quotation and citation omitted). Wendy's Old Fashioned Hamburgers of N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 381 (2009) (Wendy's). See Perry, 100 Mass. App. Ct. at 143, quoting 311 West Broadway, LLC v. Board of Appeal of Boston, 90 Mass. App. Ct. 68, 73 (2016) ("In cases brought under Boston's zoning act, 'we are guided by cases decided under the analogous provisions of G. L. c. 40A, § 17'"). "Although fact finding in the Superior Court is de novo, a judge must review with deference legal conclusions within the authority of the board." Wendy's, supra. Like the judge, we give "substantial deference" to the board's interpretation of the zoning code. Id., quoting Manning v. Boston Redev. Auth., 400 Mass. 444, 453 (1987).

As to the facts found by the Superior Court judge after trial, we accept a judge's findings of fact unless clearly

erroneous and review de novo the judge's legal conclusions, including her interpretations of the zoning code. See Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 474 (2012). The judge's factual findings will be set aside only if they are "clearly erroneous or there is no evidence to support them" (citation omitted). Fish v. Accidental Auto Body, Inc., 95 Mass. App. Ct. 355, 362 (2019). "While a judge is to give 'no evidentiary weight' to the board's factual findings, the decision of a board 'cannot be disturbed unless it is based on a legally untenable ground' or is based on an 'unreasonable, whimsical, capricious or arbitrary' exercise of its judgment in applying land use regulation to the facts as found by the judge'" (citations omitted). Wendy's, 454 Mass. at 381-382. The burden of demonstrating "that the prerequisites were met and that zoning relief was justified" is on the applicant. Perry, 100 Mass. App. Ct. at 143. When it comes to assessing the seriousness of a problem, "[w]e defer to the board's judgment only when 'reasonable minds could differ on the seriousness of a problem in relation to the issuance of a special permit.'" Shirley Wayside Ltd. Partnership, supra at 484, quoting Kinchla v. Board of Appeals of Falmouth, 11 Mass. App. Ct. 927, 927 (1981).

1. Requirement of a conditional use permit. Here, the board interpreted the zoning code to mean that the proposed

project must comply with the conditional use permit standards set forth in Article 6. The judge also ruled that "[d]evelopments occurring within a GCOD must obtain a conditional use permit." See Perry, 100 Mass. App. at 140 ("A proposed project located within a GCOD must obtain a conditional use permit . . . -- the equivalent of a special permit under G. L. c. 40A"). See also Article 32, § 32-3(3). "In contrast with a use allowed as of right, 'a [conditional use permit] concerns a use thought under the zoning code to be potentially acceptable in a zoning district, but only after and subject to review and permission of a permit granting authority, to the end that the use applied for be compatible with the allowed uses in the area in which it is to be planted.'" Perry, supra at 140 n.4, quoting KCI Mgt., Inc. v. Board of Appeal of Boston, 54 Mass. App. Ct. 254, 260 (2002).

In arguing that he was not required to obtain a conditional use permit for the proposed project, Cai points to Article 32, § 32-3, of the zoning code, entitled "General Requirements and Procedures." Section 32-3(3) states that any proposed project subject to the GCOD requirements "shall obtain a conditional use permit pursuant to the procedures set forth in Article 6 or carry out such Proposed Project in a manner consistent with the provisions of this article, as applicable" (emphasis added).

Cai points to the word "or" in this section in arguing that he had a choice whether to obtain a conditional use permit.

We disagree.  First, Article 32, § 32-5, entitled "Specific Requirements," provides that "[a]ny of the improvements specified in Sections 32-4(a)-(c) shall require a conditional use permit" (emphasis added).  Improvements specified in § 32-4(a) include the "extension of any structure, where such new . . . extension will occupy more than fifty (50) square feet of lot area," and it is that section on which the city's inspectional services department relied in concluding that the proposed project had to comply with the GCOD.  Cai does not contend that the proposed project is not subject to § 32-4(a).[7] While it may be that some projects that do not meet the criteria of § 32-4(a)-(c) do not require a conditional use permit, the proposed project is not one of them.  We read the phrase "or . . . in a manner consistent with the provisions of this article, as applicable" in § 32-3(3) to mean that Article 32 might not apply in certain circumstances, such as where an

---

[7] Pursuant to § 32-4(c), an applicant must also comply with Article 32 if the project would "[s]ubstantially [r]ehabilitate any structure" in the GCOD.  Substantial rehabilitation is defined as "alterations or repairs [that] cost more than fifty percent (50%) of the physical value of the structure."  Article 32, § 32-2.  To the extent that the determinations of the board and the judge that a conditional use permit was required may have rested on findings that the proposed project was a substantial rehabilitation, on the record before us, Cai has not demonstrated that those findings were an abuse of discretion.

application for a permit for a project predated the creation of the GCOD and the adoption of Article 32. See Article 32, § 32-4(1)-(4). Those circumstances are not present here. Moreover, to the extent that the provisions of the GCOD are ambiguous as to whether a conditional use permit is required, by its terms, § 32-5 (specific requirements) controls, as it is more specific than § 32-3(3) (general requirements). See Plainville Asphalt Corp. v. Plainville, 83 Mass. App. Ct. 710, 713 (2013). We agree with the board and the judge that the GCOD provisions required Cai to obtain a conditional use permit for the proposed project.

Cai next argues that even if the provisions of the GCOD required a conditional use permit, that requirement cannot be enforced because it would transform a use permitted as of right into a conditional use. Cai contends that zoning is concerned with uses, that his postconstruction use of 9 Johnny Court will be a "residential use," and that it will remain allowed as of right in the residential subdistrict of the Chinatown zoning district. He points to Appendix D of Article 43, which he contends sets forth the uses in the residential Chinatown district that are permitted as of right and the uses that require a conditional use permit, and he argues that "a use allowed as of right cannot be made subject to the grant of a special permit." Prudential Ins. Co. of Am. v. Board of Appeals

of Westwood, 23 Mass. App. Ct. 278, 281 (1986).  See SCIT, Inc.
v. Planning Bd. of Braintree, 19 Mass. App. Ct. 101, 106-108
(1984).

Article 43, however, was not admitted at trial.  Indeed,
the Lees listed Article 43 as a proposed exhibit, but Cai
objected to its admission as irrelevant and because its
probative value would be substantially outweighed by the danger
of confusing the issues and unfair prejudice.  By attaching it
to his proposed rulings of law filed after the close of
evidence, Cai did not introduce Article 43 in evidence, nor is
there any indication that the judge was given the opportunity to
take judicial notice of Article 43.[8]  See City Council of
Springfield v. Mayor of Springfield, 489 Mass. 184, 190 n.6
(2022).  See also Mass. G. Evid. § 202 (2022).[9]

---

[8] Even if we could take judicial notice of Article 43, we
would decline to do so here.  On Cai's objection, Article 43 was
not entered in evidence, and therefore the Lees had no
opportunity to introduce evidence or make legal arguments on any
issue pertaining to Article 43.  Further, the judge apparently
did not take judicial notice of Article 43, as she did not
mention it in her findings of fact and rulings of law.  We would
not countenance a strategy whereby a party actively and
effectively sought to exclude evidence, only to rely on that
evidence after the close of evidence and on appeal.  We note
that the copy of Article 43, Appendix B, attached to Cai's brief
defines a residential use to include a "semi-detached dwelling
occupied by not more than two families on each side of a party
wall," which would seem to exclude the proposed project.  We
need not reach the issue.

[9] Cai's architect did testify at trial that "the addition of
two stories is allowed within the zoning district" and that the

As the judge noted, it is not enough to claim that the use remains residential. While the proposed new use may remain broadly "residential," a two-family residential structure may be treated differently from a five-family residential structure. See Gage v. Egremont, 409 Mass. 345, 348 (1991) (zoning district allowed single-family and two-family uses as a matter of right but required special permit for multifamily dwellings). Based on the admitted evidence, we cannot say that requiring a conditional use permit for the conversion of a two-unit dwelling to a five-unit dwelling would transform a use permitted as of right into a conditional use. Cai's argument, therefore, is unavailing.

2. The Article 6 conditional use permit criteria. Having determined that the board and the judge correctly concluded that the proposed project required a conditional use permit, the question becomes whether the judge correctly concluded that the proposed project did not comply with Article 6, § 6-3, of the zoning code. See Fish, 95 Mass. App. Ct. at 362. The judge found that it was likely that the addition of two stories to 9 Johnny Court would have negative impacts on 7 Johnny Court. These negative impacts included possible flooding to the

---

five proposed units are also allowed "within that district." Where the judge made no finding to that effect, however, we cannot assume she found the architect to be credible in this regard.

basement of 7 Johnny Court, settlement from the increased load resulting in "at the very least . . . cracks in the brickwork and, if substantial enough, . . . serious structural damage of 7 Johnny Court," and water infiltration resulting from increased accumulation of water and snow on the roof.  Those findings, supported by abundant evidence including expert testimony, are not clearly erroneous[10] and compel the conclusion that the proposed two-story vertical addition to 9 Johnny Court would adversely affect 7 Johnny Court.[11]

Cai argues, however, that whether 7 Johnny Court is affected by the proposed project is dependent on engineering, design, and construction methods and practices that are not at issue in a zoning appeal.  In other words, Cai argues that any

---

[10] The Lees' expert, James Lambrechts, a geotechnical engineer and a professor of civil engineering, testified that "[i]t is quite likely that there's going to be some additional settlement since we already see that there's been some settlement of Number 9 that exists."  He also opined that the recharge system would "push water . . . [into] the basement areas if the elevations aren't tak[en] into account properly," and that "there is a potential for having snow drift up against that brick wall [between the two houses] and then piling up on the roof of Number 7," a roof that already had some sagging, to create additional weight on the roof of 7 Johnny Court.

[11] The judge did not specify which conditions of Article 6, § 6-3, that the proposed project failed to satisfy.  Based on the judge's factual findings, the granting of a conditional use permit was unjustified for at least any of three potential reasons:  the site was not appropriate for the proposed new use, see § 6-3(a); the use would have an adverse effect on the neighborhood, § 6-3(b); or the use would create a nuisance, §6-3(d).

structural issues are governed by the State building code (building code) and not the zoning code, and therefore the judge exceeded the scope of the board's review when she concluded that there would be adverse impacts on 7 Johnny Court. Cai contends that any structural issues would be addressed through other proceedings, apparently meaning those involving the building code, although he does not identify specifically what proceedings he means.[12]

It is true that the building code generally addresses structural issues and the zoning code addresses uses. See Cartensen v. Cambridge Zoning Bd. of Appeals, 11 Mass. App. Ct. 348, 356-357 (1981), quoting Enos v. Brockton, 354 Mass. 278, 280-281 (1968) ("the building code and zoning laws have different purposes and procedures. 'Whereas the main purpose of zoning is to stabilize the use of property and to protect an area from deleterious uses [citations omitted], a building code "relates to the safety and structure of buildings"'"). See also Rinaldi v. Board of Appeal of Boston, 50 Mass. App. Ct. 657, 660-661 (2001) (rejecting argument that proposed alterations

---

[12] At oral argument, Cai's counsel contended that the inspectional services department would not allow the proposed project to go forward if the proposed project would adversely affect 7 Johnny Court, i.e., that no engineer would sign off on it. Cai does not assert that the owners of 7 Johnny Court would have notice or standing to be heard in any such inspectional services department proceedings; rather, he asserts that they should "trust in the system."

were in violation of building code, in addressing claim that zoning variance should have been denied). The Lees do not claim that the proposed project violates the building code.

Cai's insistence that the Lees' concerns about the proposed project could be dealt with in future proceedings involving the building code would render meaningless Article 32, § 32-5, pertaining to the GCOD, and Article 6, § 6-3, pertaining to conditional use permits. As discussed above, considerations for granting a conditional use permit include whether the specific site is an appropriate location for such use and whether the use will adversely affect the neighborhood. Noise, dust, and other nuisances have justified the denial of a special permit. See Uxbridge v. Griff, 68 Mass. App. Ct. 174, 177 (2007), and cases cited. Physical impacts to 7 Johnny Court more directly bear on whether the proposed project is appropriate and safe for the site. We discern nothing in the zoning code that prohibited the board or the judge from considering the location of the proposed project and its impacts on the neighborhood, including the likely impact of a two-story vertical addition at 9 Johnny Court on the stability of 7 Johnny Court, with which it shares a party wall. The judge did not exceed her authority in determining that 9 Johnny Court was not an appropriate site for the proposed project, and her findings of fact on that issue were not clearly erroneous. Lastly, her conclusion that the proposed project at

9 Johnny Court would likely have negative impacts on 7 Johnny Court was reasonable.[13]

Judgment affirmed.

---

[13] Because of the result we reach, we need not consider Cai's argument that, to the extent the board's decision concluded that a conditional use permit was required, the decision was flawed because the board supposedly delegated its authority to other officials.